**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES PATRICK DUNGAN, et. al.,<br>Plaintiff,<br>v.<br>COUNTY OF SHASTA, et al.,<br>Defendants. | No. 2:24-cv-2394-DAD-DMC<br><br>ORDER<br>and<br>FINDINGS AND RECOMMENDATIONS |

Plaintiffs, who are proceeding pro se, bring this civil action. Pending before the Court is Defendants' motion to dismiss Plaintiffs' second amended complaint. See ECF Nos. 51 and 52. Plaintiffs have filed an opposition and notice of errata.[1] See ECF Nos. 54 and 55. The parties appeared before the undersigned and, after considering the parties' arguments, the Court directed the parties to submit additional briefing related to Plaintiffs' due process claim, as well as Defendants' contention that Plaintiffs fail to assert sufficient facts to establish a causal link between the individual defendants and a constitutional violation. See ECF No. 59. The Court directed that, upon completion of supplemental briefing, the matter would stand submitted without a further hearing unless otherwise ordered. The parties have timely filed their supplemental briefs. See ECF Nos. 60, 61, and 62.

[1] Plaintiffs' notice of errata includes exhibits which were intended to be attached to the second amended complaint, but which were not due to a filing error.

Also before the Court are: (1) Plaintiffs' motion for issuance of a summons, see ECF No. 50; and (2) Plaintiffs' motions for injunctive relief, see ECF Nos. 63 and 66. Defendants have filed an opposition to Plaintiffs' first motion for injunctive relief, see ECF No. 64, and Plaintiffs have filed a reply, see ECF No. 65. Defendants have not responded to Plaintiffs' second motion for injunctive relief.

## I. BACKGROUND

### A. Procedural History

Plaintiffs initiated this action with a pro se complaint filed on September 24, 2024. See ECF No. 1. Plaintiff filed a first amended complaint as of right on October 15, 2024. See ECF No. 14. All defendants moved to dismiss the first amended complaint on October 21, 2024. See ECF No. 21. The Court issued findings and recommendations addressing Defendants' motion to dismiss on April 11, 2025. See ECF No. 47. Specifically, the Court recommended as follows:

> 1. Plaintiffs' Fifth Amendment and conspiracy claims be dismissed without leave to amend.
>
> 2. Plaintiffs be permitted leave to amend as to their remaining claims (due process, First Amendment, Fourth Amendment, and failure-to-prevent misconduct).
>
> See id.

The District Judge adopted the findings and recommendations in full on August 18, 2025. See ECF No. 48. Plaintiffs filed the currently operative second amended complaint on September 12, 2025. See ECF No. 49.

### B. Plaintiffs' Allegations

Plaintiffs name the following as defendants: (1) County of Shasta; (2) Shasta County Health & Human Services Agency (SCHHSA); (3) SCHHSA Child Services Division; (4) Shasta County Superior Court Administration; (5) Michal Brenn, County Counsel; (6) Jennifer Ayers, court-appointed minors' counsel; (7) Danielle Gannon, SCHHSA social worker; (8) Nikki Quintana, SCHHSA social worker; (9) Crustal Nelson, SCHHSA social worker; (10)

Lisa Spencer, SCHHSA social worker; (11) Laura Burch, Director of SCHHSA; (12) Molly Bigelow, Shasta County Superior Court judge; (13) Monique McKee, Shasta County Superior Court judge; (14) Evan Armstrong, Shasta County Superior Court marshal; (15) Alan Cox, County Counsel; (16) Lori J. Scott, Shasta County Public Administrator; and (17) Shasta County Administration. See ECF No. 49, pgs. 3-6.

Plaintiffs assert the following by way of introduction to their claims:

> This is a civil action brought under 42 U.S.C. § 1983 and related federal laws to vindicate the constitutional rights of Plaintiffs James Patick Dungan and Lacey Ranee Dungan, who suffered deprivation of due process, equal protection, and other fundamental rights at the hands of government actors in Shasta County, California. These violations arose from misconduct within the Shasta County dependency court system, the Health and Human Servies Agency, and the Shasta County Superior Court's Mashal's Office. Plaintiffs assert that Defendants engaged in a pattern of extrinsic fraud, unlawful surveillance, retaliation for protected speech, discriminatory and abusive security practices, and the fabrication and concealment of material information. These actions resulted in the unconstitutional removal of children, deprivation of meaningful access to the courts, and the infliction of ongoing harm to the Plaintiffs' family life, emotional well-being, and fundamental civil rights.
>
> ECF No. 49, pgs. 1-2.

Plaintiffs are the biological father and stepmother of two minor children who were the subject of dependency proceedings in Shasta County. See id. at 6. The proceedings were initiated based on allegations that the children's biological mother, Melissa Winters, furnished alcohol and marijuana to minors, became intoxicated, and engaged in physical violence, ultimately resulting in removal of the children from her home. See id. Plaintiffs allege that, despite this, Shasta County officials "failed to take meaningful steps to reevaluate Melissa's custody or visitation rights." Id. at 7. Plaintiffs further claim that "the agency and court continued to favor Melissa in custody determinations while suppressing critical police and witness evidence." Id. at 7.

On October 29, 2024, Plaintiff James Dungan submitted a formal request for criminal charges to be filed against Ms. Winters based on continued child endangerment. See id. at 7-8. Criminal charges were eventually filed against Ms. Winters in January 22, 2025. See id. at 8. Plaintiffs contend that the three-month delay "illustrates a deliberate pattern of institutional

inaction and bias in favor of the mother, undermining due process and compromising the safety of the children." Id. Plaintiffs submitted formal written complaints to the California Commission on Judicial Performance against Judge Molly Bigelow, and to the California State Bar against Michael Brenn and Jennifer Ayers. See id.

Next, Plaintiffs contend that, on January 31, 2024, they received a copy of the juvenile dependency petition. See id. According to Plaintiffs, the version of the petition they received "included a demonstrably false allegation that Plaintiff James Dungan had a criminal history." Id. Plaintiffs claim this allegation was relied upon during the dependency proceedings and "severely prejudices Plaintiffs' position." Id. Plaintiffs assert that, upon later review of the official court file, they discovered a different version of the same dependency petition with the criminal history section crossed out and initialed "MB" with the same file-stamped date. See id. Plaintiffs allege that "[t]he two versions also contain differently placed signatures and formatting inconsistencies, suggesting unauthorized alteration or tampering with official documents." Id. Plaintiffs state that they were never informed "of the falsehood or the amendment," or provided an opportunity to rebut the false criminal history. Id. at 9.

Plaintiffs claim that Defendant Ayers, an attorney who had been appointed to represent the children in the dependency proceedings, failed to advocate for the children's safety and "repeatedly aligned herself with the agency and failed to disclose or challenge clear due process violations, including off-record communications between the court and County Counsel." Id. Plaintiffs also allege that Defendant Brenn, the Shasta County Counsel, also engaged in improper off-the-record communications with Defendant Bigelow, the Shasta County Superior Court Judge presiding over the dependency proceedings. See id. According to Plaintiffs, Judge Bigelow "acknowledged off-the-record communications occurred but refused to recuse herself or fully disclose their substance." Id. Plaintiffs allege that Judge Bigelow ruled in favor of the County without addressing the issue of impartiality. See id.

/ / /

/ / /

/ / /

Next, Plaintiffs claim that, on December 6, 2024, while a motion to disqualify Judge Bigelow was pending, Defendant Brenn requested a meeting in chambers to discuss case scheduling. See id. Plaintiffs' attorney – Ian Collins – objected and requested that his clients be present. See id. Notwithstanding counsel's objection, Judge Bigelow went ahead with the meeting with all counsel but without Plaintiffs present. See id. No transcript was ever entered into the record. See id.

Next Plaintiffs claim as follows:

> On January 4, 2025, Plaintiff James Dungan submitted a formal request for the complete dependency case file. See id. The case was closed on January 7, 2025, but the file was not provided until February 10, 2025. See id. Upon receipt, Plaintiffs observed that the original request form appeared to have bene altered – changing the "1" for January to a "2" for February. On February 11, 2025, just one day after the case file was disclosed and one day before Plaintiffs' federal hearing, Judge Bigelow recused herself from the case. Plaintiffs reasonably believe the delay and altered form were part of a coordinated effort to allow tampering with or concealment of damaging material.
>
> Id. at 9-10.

Next, Plaintiffs allege that they also submitted a formal written complaint to the Shasta County Superior Court regarding incidents of harassment, denial of access, and official misconduct by court clerks and marshals. See id. at 10. These incidents include refusal to file documents, obstruction of access to public records, discriminatory treatment of Plaintiff Lacey Dungan, and threatening conduct by Defendant Armstrong, a court marshal. See id. Plaintiffs also assert that Defendant Armstrong, in separate incidents, harassed and intimidated Plaintiffs at the courthouse, including an "invasive and inappropriate search of Plaintiff Lacey Dungan despite her known medical disability and visible orthopedic boot." Id.

Plaintiffs next set forth allegations of retaliation. According to Plaintiffs, they were subjected to surveillance and retaliation for public speech and online posts. See id. More specifically, Plaintiffs allege that social workers monitored James Dungan's social media posts and used those posts to justify adverse action. See id.

/ / /

/ / /

Finally, Plaintiffs outline facts relating to alleged retaliation and misconduct related to a probate case for the estate of Louise Pesetti, Plaintiff James Dungan's late grandmother. See id. at 11-12. These allegations concern Shasta County Counsel Alan Cox, Shasta County Public Administrator Lori Scott, and Shasta County Superior Court Judge Monique McKee. See id. These allegations are being asserted for the first time in the operative second amended complaint.

Plaintiffs assert the following claims for relief:

| | |
|---|---|
| Count One | Violation of due process resulting from extrinsic fraud (against Defendants Bigelow, Brenn, Ayers, Gannon, Nelson, Spencer, Quintana, and SCHHSA). |
| Count Two | Violation of the First Amendment resulting from retaliation (against Defendants Gannon, Ayers, Brenn, and SCHHSA). |
| Count Three | Violation of the Fourth Amendment resulting from unreasonable search and seizure (against Defendants Gannon, Nelson, Spencer, Quintana, and SCHHSA). |
| Count Four | Failure to prevent misconduct (against municipal defendants only). |
| Count Five | Violation of the First Amendment resulting from denial of access to the courts, retaliation, and failure to accommodate disabilities (against Shasta County Superior Court Administration and Armstrong). |
| Count Six | Unlawful interference, retaliation, and procedural violations in a probate proceeding (against County of Shasta, Cox, McKee, Scott, and Shasta County Administration). |

ECF No. 49, pgs. 13-33.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II. DISCUSSION

### A. Plaintiffs' Motions for Injunctive Relief

The legal principles applicable to requests for injunctive relief, such as a temporary restraining order or preliminary injunction, are well established. To prevail, the moving party must show that irreparable injury is likely in the absence of an injunction. See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365 (2008)). When a mandatory injunction is sought – one that goes beyond simply maintaining the status quo during litigation – the moving party bears a "doubly demanding" burden and must establish that the law and facts clearly support injunctive relief. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases." Id. (internal quotations omitted).

To the extent prior Ninth Circuit cases suggest a lesser standard by focusing solely on the possibility of irreparable harm, such cases are "no longer controlling, or even viable." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Under Winter, the proper test requires a party to demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public interest. See Stormans, 586 F.3d at 1127 (citing Winter, 129 S.Ct. at 374). The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied.'" See Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting Alliance for the Wild Rockies v. Cottress, 632 F.3d 1127, 1135 (9th Cir. 2011)).

To prevail on a motion for injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." Pac. Radiation Oncology, LLC v. Queen's Medical Ctr., 810 F.3d 631, 636 (9th Cir. 2015). Thus, there must be a nexus between the claims raised in the motion and the claims in the

underlying complaint itself. See id. This nexus is satisfied where the preliminary injunction would grant "relief of the same character as that which may be granted finally." See id. (quoting De Beers Consol. Mines, 325 U.S. 212, 220 (1945)).

In their motions for injunctive relief, Plaintiff seek an order: (1) enjoining Defendants “from further interfering with Plaintiffs’ Medi-Cal benefits or Social Security Administration (SSA) payments without due process or notice,” ECF No. 63; and (2) enjoining Defendants “from engaging in warrantless investigative intrusions into Plaintiffs’ home and its curtilage. . .,” ECF No. 66.

As to Plaintiffs’ first motion related to Medi-Cal and Social Security benefits, Defendants argue:

> Here, Plaintiffs’ SAC (ECF 49) challenges alleged due process violations in child custody and juvenile court proceedings, **not** the denial or administration of medical or federal benefits as sought in the current motion. Notwithstanding that Medi-Cal is not a “tax status”, or that SSA is administered by the United States Social Security Administration, the motion for preliminary injunction clearly addresses matters outside the SAC’s scope in terms of both allegations or relief sought. Accordingly, Defendants submit that Plaintiffs’ motion for preliminary injunction cannot show any likelihood of success on the merits of such unrelated issues which present no sufficient nexus of facts to the relevant claims. Thus, Plaintiffs’ motion should be denied.

ECF No. 64, pg. 3 (emphasis in original).

The Court agrees that Plaintiffs’ first motion for injunctive relief related to Medi-Cal and Social Security benefits should be denied because there is no nexus between the injury claimed in the motion and the claims asserted in the second amended complaint. Similarly, Plaintiffs’ second motion for injunctive relief related to intrusions into Plaintiffs’ home and curtilage should also be denied because the motion fails to show a nexus to the underlying claims asserted in the second amended complaint.

**B. Defendants’ Motion to Dismiss**

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only “a short and plain statement of the claim showing that the pleader is entitled to relief” in order to “give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.” Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than “a formulaic recitation of the elements of a cause of action;” it must contain factual allegations sufficient “to raise a right to relief above the speculative level.” Id. at 555-56. The complaint must contain “enough facts to state a claim to relief that is plausible on its face.” Id. at 570. “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Iqbal, 129 S. Ct. at 1949. “The plausibility standard is not akin to a ‘probability requirement,’ but it asks for more than a sheer possibility that a defendant has acted unlawfully.” Id. (quoting Twombly, 550 U.S. at 556). “Where a complaint pleads facts that are ‘merely consistent with’ a defendant’s liability, it ‘stops short of the line between possibility and plausibility for entitlement to relief.” Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

of which the Court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

In their motion to dismiss, Defendants argue: (1) Plaintiff Lacey Dungan lacks Article III standing to bring any claims: (2) Plaintiffs' due process claim should be dismissed under the Rooker/Feldman abstention doctrine and because Plaintiffs failed to pursue state remedies; (3) Plaintiffs' claims related to the probate proceedings are barred under Younger and have been improperly joined in the current action; (4) the Court should abstain from exercising jurisdiction over any claims involving family issues; (5) Plaintiffs' claims arising from the dependency proceedings represent a collateral attack on a final state court judgment, which this Court cannot hear; (6) Plaintiffs' allegations of fraud are internally inconsistent and/or insufficient to state a claim; (7) Plaintiffs' retaliation claim fails because Plaintiffs make no reference to adverse action taken against them as a result of protected activity; (8) Plaintiffs' Fourth Amendment claim fails because they have not alleged that any search or seizure occurred; (9) Plaintiffs' claims against the individual defendants are too vague to establish a causal link; and (10) Plaintiffs' claims against the municipal entities fail because they have not alleged municipal policy. See ECF No. 51-1.

1. Claims Related to Probate Proceedings

For the first time in the second amended complaint, Plaintiffs raise claims related to a probate proceeding. Neither the original nor the first amended complaint alleged any claims related to probate proceedings. Plaintiffs cannot now add such claims as-of-right under Federal Rule of Civil Procedure 15 because they already exercised that one-time option with the filing of the first amended complaint and because more than 21 days elapsed after Defendants responded to the first amended complaint by way of a motion to dismiss before the second amended complaint was filed. See Fed. R. Civ. P. 15. Additionally, the District Judge in ruling on Defendants' motion to dismiss the first amended complaint did not grant leave to amend to add

new claims. Rather, the Court granted leave to amend only as to Plaintiffs' due process, First Amendment, Fourth Amendment, and failure-to-prevent misconduct claims. See ECF No. 48. Finally, addition of claims relating to probate proceedings would constitute misjoinder of unrelated claims in violation of Federal Rule of Civil Procedure 18. For these reasons, Plaintiffs' claims related to probate proceedings, specifically Count Six, should be dismissed without prejudice to asserting those claims in a separate action.

2. Standing

Defendants argue that Plaintiff Lacey Dungan lacks standing to bring any claims related to the dependency proceedings because, as stepmother, she has no legal interest in the minor children which were the subject of those proceedings. See ECF No. 51-1, pgs. 3-4. To establish Article III standing, a plaintiff must demonstrate: (1) that the plaintiff suffered in injury in fact that is concrete and not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

According to Defendants: "Here, Plaintiff Lacey Dungan does not allege to have any injury arising from the child dependency proceedings, as stepmother, she had no legal interest in the children, nor the proceedings themselves." ECF No. 51-1, pg. 4. This argument is persuasive as to claims arising from the conduct of the dependency proceedings and the result of those proceedings (i.e., Count One and Count Four). Plaintiff Lacey Dungan, however, has alleged claims under the First Amendment for retaliation and denial of access to the courts (i.e., Count Two and Count Five), which are specific to her. The sufficiency of these allegations is discussed below.

3. Municipal Liability Claims

Plaintiffs assert a number of claims, particularly Count Four, against municipal entities. See ECF No. 49. Municipalities and other local government units are among those "persons" to whom § 1983 liability applies. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). A local government unit, however, may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability. See Bd. of County

Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Thus, municipal liability must rest on the actions of the municipality, and not of the actions of its employees or officers. See id. To assert municipal liability, therefore, the plaintiff must allege that the constitutional deprivation complained of resulted from a policy or custom of the municipality. See id.

Defendants' argument that Plaintiffs have not identified any municipal policy or custom is not persuasive on the facts alleged in the second amended complaint. Specifically, Plaintiffs allege that "[t]he County maintained a custom of allowing or tolerating ex parte communications between County Counsel and judicial officers, which influenced court outcomes and deprived Plaintiffs of a fair hearing." ECF No. 49, pg. 23. Plaintiffs further allege: "The County permitted policies that excluded parents like Lacey Dungan from participation in proceedings, despite no lawful grounds, resulting in a denial of access to justice." Id. at 24. Plaintiffs add: "The County permitted and enabled courtroom practices where off-record chambers meetings were held without Plaintiffs' presence." Id. These allegations, which the Court must presume are true at this stage of the proceedings, are sufficient to establish the elements of Plaintiffs' municipal liability claims.

4. Due Process Claims

At the heart of Defendants' motion to dismiss are various arguments related to Plaintiffs' due process claims arising from the state court child dependency proceedings. Specifically, Defendants contend: (1) the claims are barred by abstention doctrines; (2) the claims are barred as an improper collateral attack; and (3) the claims are barred because Plaintiffs failed to exhaust state law remedies. See e.g. ECF No. 51-1. Each argument is considered below.

i. Applicability of Abstention Doctrines

Defendants argue that Plaintiffs' due process claims should be dismissed pursuant to the Rooker/Feldman abstention doctrine. See ECF No. 51-1, pgs. 4-5. Defendants also argue that the Court should abstain from exercising jurisdiction over "family issues" pursuant to the "domestic relations exception." Id. at 7-8.

/ / /

/ / /

a. *Rooker/Feldman* Abstention

The general applicability of the Rooker/Feldman abstention doctrine to Plaintiffs' due process claims is the main focus of Defendants' motion to dismiss and was the primary subject of the Court's prior rulings in this case which advised Plaintiffs of the applicable legal principles. See e.g. ECF No. 47 (findings and recommendations addressing Defendants' first motion to dismiss). Defendants now renew this argument. See ECF No. 51-1, pgs. 4-5.

Under the Rooker/Feldman abstention doctrine, federal courts lack jurisdiction to hear matters already decided in state court. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine applies in cases "brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).

As has now been made clear in the operative second amended complaint, the child dependency proceedings concluded on January 7, 2025. See ECF No. 49, pg. 9. This District action was commenced on September 4, 2024, i.e. *before* any state court proceedings were concluded. Thus, Plaintiffs' Federal action does not concern injuries caused by state court judgments rendered before that Federal Court case was filed. For this reason, the Rooker/Feldman abstention doctrine does not apply.

b. Domestic Relations Exception

Defendants argue:

> Federal courts have long applied the "domestic relations exception" to accepting jurisdiction over claims for relief that would require it to grant a divorce, determine alimony or support obligations, or resolve parental conflicts over the custody of their children. *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992); see *In re Burrus*, 136 U.S. 586 (1980); see also *Bennett v. Bennett*, 682 F.2d 1039, 1042 (D.C. Cir. 1982).
>
> Here, Plaintiffs appears to be attempting to collaterally attack some family court matter in which Plaintiff James Dungan believes his parental rights were affected in some way, which are ostensibly ordered by the juvenile or family court, and thus, he seeks to have this court intervene in those child custody/parental issues. As an additional consideration, the presence of family-related matters in this action argues strongly for the propriety of total abstention of jurisdiction under the domestic relation

> exception. See *Mojica v. Nogueras–Cartagena*, 573 F.Supp.2d 520, 523 (D.P.R.2008) (finding that even if a case is not strictly fit for the application of the domestic relations exception, principles of comity would still make abstention appropriate) (citing *Armstrong v. Armstrong*,508 F.2d 348 (1st Cir.1974); see *Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir.1981) ( "[A]lthough the exception has been narrowly confined, we and other courts of appeals, have held that federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception."); see *LaMontagne v. LaMontagne*, 394 F.Supp. 1159, 1169 (D.Mass.1975) (holding that reasons of comity and common sense made abstention appropriate where, although father of minor child sued mother, probation officers and others alleging violation of Eighth and Fourteenth Amendment rights, the action was essentially a domestic relations contest).
>
> In accordance with the above authorities, this court should nonetheless decline jurisdiction over such family/custody issues. Therefore, Defendants contend that Plaintiffs' complaint should be dismissed.
>
> ECF No. 51-1, pgs. 7-8.

Defendants' argument is not persuasive based on the cited authority. Specifically, Plaintiffs here are not asking this Court to grant a divorce, determine alimony or support obligations, or resolve conflicts between parents concerning child custody.

ii. Collateral Attack on State Court Proceedings

Defendants argue that Plaintiffs' due process claims relating to the conduct and outcome of the state court child dependency proceedings should be dismissed as an improper collateral attack on a state court judgment. See ECF No. 51-1, pgs. 8-9. This is Defendants' most viable argument. According to Defendants:

> "Collateral attack is a jurisdictional issue that is properly addressed under a Rule 12(b)(1) motion." *State Farm Mut. Auto. Ins. Co. v. Indus. Pharmacy Mgmt., LLC*, 2009 WL 2448474, at *4 (D. Haw. Aug. 11, 2009) (citing *United States v. Lowry*, 512 F.3d 1194, 1203 (9th Cir. 2008) (affirming the district court's conclusion that it did not have jurisdiction to consider a collateral attack).
>
> Whether considered jurisdictional or not, the collateral attack doctrine stands for the proposition that "it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected." *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995). In other words, a collateral attack questions the validity of a judgment or order in a separate proceeding that is not intended to obtain relief from the judgment. Meinhard–Commercial Corp., 462 F.2d 358, 360 (5th Cir.1972). State law is the same: a collateral attack is brought in a proceeding not having the specific purpose of attacking a judgment or order – "it is an attempt to avoid the effect of a judgment or order made in some other proceeding." (*Gonzales v. California*, 68 Cal. App. 3d 621, 632 (1977), citing 5 Witkin, Cal. Procedure (2d ed. 1971) p. 3587.)

/ / /

> Here, Plaintiffs are clear in their attempt to show that procedural and house-keeping issues occurred in the Juvenile Court proceedings. The issues include their representation, decisions regarding scheduling, petition filing, and admission of evidence, all issues that are under the purview of the state court, and should not be called into question by a District Court without a question of the validity of the law. Therefore, Defendants contend that Plaintiffs' complaint should be dismissed.
>
> ECF No. 51-1, pgs. 8-9.

This argument is persuasive. Plaintiffs have not alleged facts which would show that the final determination in the state court child dependency proceedings has been reversed. While Plaintiffs have now alleged in the second amended complaint that the dependency proceedings concluded in January 2025, their supplemental brief indicates that their appeal in state court was rejected and the child dependency rulings were upheld. See ECF No. 60. The Court thus finds that Plaintiffs' due process claims in this case represent an improper collateral attack on the underlying child dependency decision and should be dismissed with prejudice.

In their supplemental briefing, Plaintiffs cite Benavidez v. County of San Diego, 993 F.3d 1134 (9th Cir. 2021), for the proposition that their claims do not constitute a collateral challenge because "civil rights claims alleging misuse of authority by child welfare workers not barred as collateral attack." ECF No. 60, pg. 4. The Court does not agree because, unlike Benavidez, Plaintiffs' claims directly challenge Judge Bigelow's handling of the child dependency case and ultimate determination the judge reached.

iii. Exhaustion of State Remedies

Defendants argue that Plaintiffs' due process claims related to the child dependency proceedings should be dismissed because Plaintiffs did not first seek state remedies. See ECF No. 51-1, pg. 11. According to Defendants:

> Plaintiffs are barred from seeking a federal remedy for a procedural Due Process violation without having exhausted any state law remedy for any violation of any claimed procedural due process rights. See *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 879 (9th Cir. 1987) *cert. denied* 488 U.S. 827 (1988); *Mays v. City of Tucson*, 782 F.2d 790, 792 (9th Cir. 1986); *Parratt v. Taylor*, 451 U.S. 527 (1981).
>
> Here, notwithstanding that Plaintiffs appear to be collaterally attacking the family court proceedings by arguing their procedural due process rights were violated during the proceedings, the above authorities

> stand for the proposition that Plaintiffs must seek state remedies before seeking to invoke federal ones. Accordingly, on this additional ground, the motion should be granted without leave to amend.
>
> ECF No. 51-1, pg. 11.

This argument is not persuasive based on the allegations set forth in Plaintiff's supplemental brief. Specifically, while not alleged in the amended complaint, Plaintiffs stated in their supplemental brief that they appealed the trial court's child dependency ruling to the state appellate court, which rejected their appeal. It thus appears that Plaintiffs have exhausted state court processes. Nonetheless, because the Court otherwise finds that Plaintiffs' due process claims are an improper collateral attack, dismissal of such claims with prejudice is warranted despite apparent exhaustion.

5. <u>Other Constitutional Claims</u>

While the crux of Plaintiffs' complaint is their dissatisfaction with the child dependency proceedings and outcome in state court and related due process claims, Plaintiffs also allege various additional stand-alone constitutional torts. Each is discussed below.

i. <u>Fourth Amendment Claims</u>

Plaintiffs allege the following specific conduct in support of their Fourth Amendment claims:

> 1. Defendant Gannon, a county social worker, monitored Plaintiff James Dungan's social media activity and reported on that activity to influence court decision. <u>See</u> ECF No. 49, pg. 22.
>
> 2. Defendants Nelson, Spencer, and Quintana accessed and/or referenced information from the California Law Enforcement Telecommunications System (CLETS) regarding Plaintiff James Dungan and used that information to file a false criminal history in the dependency proceedings.
>
> <u>See</u> ECF No. 49, pg. 22.

The protections of the Fourth Amendment only apply if there has been an actual search or seizure. <u>See</u> <u>United States v. Sandoval</u>, 200 F.3d 659 (9th Cir. 2000). Merely being the target of an investigation does not amount to a search or seizure which is actionable under § 1983. <u>See</u> <u>United States v. Mayer</u>, 503 F.3d 740, 749-50 (9th Cir. 2007) (concluding that there is no probable cause requirement when a law enforcement agency investigates an individual or group).

Further, accessing stored records in a database, such as CLETS, does not constitute a search in the context of the Fourth Amendment because there is no reasonable expectation of privacy in such information when it is legitimately acquired. See United States v. Muhtorov, 187 F. Supp. 3d 1240, 1256 (D. Colo. 2015); see also Hallstein v. City of Hermosa Beach, 87 F. App'x 17, 19 (9th Cir. 2003) (dismissing claim related to data stored in the DMV and police department databases in absence of any allegation such information was improperly acquired).

Defendants argue that Plaintiffs' Fourth Amendment claims fail. This argument is persuasive for two primary reasons. First, Plaintiffs cannot claim any expectation of privacy under the Fourth Amendment with respect to social media posts made by James Dungan because such posts were made on a public forum and because the search was merely investigatory. Second, Plaintiffs cannot maintain a claim based on a search of the CLETS database because they do not allege that the information in the database was inappropriately obtained and because the search was merely investigatory.

In deciding Defendants' motion to dismiss Plaintiffs' first amended complaint, the Court granted leave to amend as to Plaintiffs' Fourth Amendment claims because they had not previously been advised by the Court of the applicable legal principles and because allegations concerning the CLETS system were first alleged in Plaintiffs' opposition brief. Having now been advised of the applicable legal principles in the findings and recommendations addressing the first motion to dismiss and having had an opportunity to include their allegations regarding the CLETS system in the operative second amended complaint, Plaintiffs' allegations still fail. Plaintiffs' Fourth Amendment claims should now be dismissed without further leave to amend and with prejudice.

ii. First Amendment Retaliation Claims

In Count Two, Plaintiffs allege retaliation. See ECF No. 49. Pgs. 19-21. Plaintiffs claim the following specific acts of retaliation:

> 1. Defendant Gannon, a social worker, monitored Plaintiff James Dungan's public social media posts and shared that content within internal reports. Plaintiffs assert this was done to intimidate and retaliate against James Dungan for publicly criticizing agency actions and advocating for his children.

/ / /

> 2. Defendant Ayers, the children's court-appointed counsel, failed to advocate for the children's and parents' constitutional rights to participate in proceedings, and endorsed the courtroom exclusion of Lacey Dungan.
>
> ECF No. 49, pg. 20.

In Count Five, Plaintiffs further allege:

> 1. Unnamed court staff refused to accept Plaintiffs' filings, transcript requests, and fee waiver requests based on false procedural reasons.
>
> 2. Defendant Armstrong, a court marshal, subjected Plaintiff Lacey Dungal to invasive security screening.
>
> ECF No. 49, pgs. 29-30.

To state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate government purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the plaintiff must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The plaintiff must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the plaintiff must establish the following in order to state a claim for retaliation: (1) government officials took adverse action against the plaintiff; (2) the adverse action was taken because the plaintiff engaged in protected conduct; (3) the adverse action chilled the plaintiff's First Amendment rights; and (4) the adverse action did not serve a legitimate government purpose. See Rhodes, 408 F.3d at 568.

Here, none of Plaintiffs' allegations of retaliation include facts indicating adverse conduct which was motivated by protected activity. As to Defendant Gannon, Plaintiffs do not allege any adverse actions. Monitoring Plaintiff Dungan's public social media posts does not

constitute adverse action because, as explained above, officials may access public social media posts in an investigatory capacity. As to Defendant Armstrong, Plaintiffs do not allege that the security screening procedures Lacey Dungan was subjected to failed to serve a legitimate government function which, in this case, would be court security. Nor have Plaintiffs alleged that Defendant Armstrong's conduct was motivated by Plaintiffs engaging in protected activity given that Plaintiffs fail to allege that Defendant Armstrong was even aware of Plaintiffs' activities. Similarly, as to Plaintiffs' claim that unnamed court staff refused to accept filings, Plaintiffs do not allege that such personnel were aware of any of Plaintiffs' protected activities. Finally, Plaintiffs' claim that Defendant Ayers failed to effectively advocate fails because Plaintiffs have not alleged any specific facts to show how Defendant Ayers engaged in adverse action or that she did so having knowledge of specific protected activities taken by Plaintiffs.

In ruling on the prior motion to dismiss, the Court determined that Plaintiff's retaliation claims were insufficient as alleged in the first amended complaint because Plaintiffs had not included facts to link a named defendant to specific acts of retaliation. In the second amended complaint, Plaintiffs appear to attempt to do so, albeit insufficiently as discussed above. Given that Plaintiffs have not been previously advised of the specific requirements for presenting a viable retaliation claim, Plaintiffs should be permitted a further opportunity to amend as to their retaliation claims.

iii. First Amendment Access-to-the-Courts Claims

In Count Five, Plaintiffs allege denial of access to the courts.[2] See ECF No. 49, pgs. 29-31. Specifically, as outlined above, Plaintiffs contend that unnamed Shasta County

[2] Plaintiffs also assert a violation of the Americans with Disabilities Act (ADA) as to Plaintiff Lacey Dungan based on their allegation that Defendant Armstrong, a court marshal, made her remove a prescribed orthopedic boot during security screening. See ECF No. 49, pg. 30. Plaintiffs' original complaint makes no reference to any violation of the ADA. See e.g. ECF No. 1. Similarly, no ADA claim is presented in the first amended complaint. See e.g. ECF No. 14. Therefore, as with Plaintiffs' new claims related to probate proceedings, Plaintiffs' new ADA claims have been added absent stipulation or leave of court and contrary to the District Judge's order granting leave to amend. Such claims should be dismissed without prejudice to asserting them in a separate action or asserting them in the current action upon stipulation or an order granting leave to amend.

Superior Court staff refused to accept Plaintiffs' filings. See id.

The United States Supreme Court has identified two categories of access-to-court claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first category includes "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability to prepare and file a suit. Id. at 413. The second category, "backward-looking" claims, allege that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 413-14. These cases look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414.

To establish an access to the court violation, a plaintiff must identify an actual injury. Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2 (E.D. Cal. Apr. 17, 2020). An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2. An actual injury is a jurisdictional requirement and may not be waived. See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL 1904818, at *2. And in the backward-looking context more specifically, a plaintiff must identify: (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought." Harbury, 536 U.S. at 414-18; Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL 714300, at *6 (E.D. Cal. Feb. 22, 2017).

Generally, without reference to specific claims, Defendants argue that Plaintiffs fail to allege facts to establish a causal connection between the individual named defendants and a constitutional violation. See ECF No. 51-1, pg. 13. Here, Plaintiffs' allegations that court staff refused to accept filings could plausibly support a claim of denial of access to the courts, but only if additional facts can be alleged. Specifically, Plaintiffs will first need to identify the specific individuals allegedly responsible for refusing to accept their filings. Further, Plaintiff will need to

identify an actual injury. As with Plaintiffs' retaliation claims, because the Court has not previously advised Plaintiffs of the applicable legal standards for an access-to-the-courts claim, the Court should permit further leave to amend.

6. Causal Link

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

After reciting the above legal standards, Defendants argue: "Here, Defendants submit the claims lack sufficiently specific allegations as [to] which defendant did what." ECF No. 51-1, pg. 13. Defendants did not provide any further analysis. On the Court's invitation, Defendants provided additional analysis in their supplemental brief. See ECF No. 61.

As to Defendant Lori J. Scott, the Court agrees with Defendants that the amended complaint contains no allegations as to this defendant. See ECF No. 61, pg. 8. Plaintiffs should be afforded an opportunity to amend to allege fact showing Defendant Scott's personal involvement in the claims alleged.

As to Defendant Laura Burch, the Court agrees with Defendants that the only allegations contained in the amended complaint are that Defendant Burch is the director of the SCHHA. See id. Plaintiff do not allege in the amended complaint how Defendant Burch participated in the alleged constitutional violations. Plaintiffs should be provided leave to amend as to Defendant Burch.

/ / /

As to Defendants Lisa Spencer, Crystal Nelson, Nikki Guintana, and Danielle Gannon, Defendants' argument is not persuasive. As Defendants acknowledge in their supplemental brief, Plaintiffs allege that these individuals included false statements in the juvenile dependency petition by reporting that Plaintiff James Dungan had a criminal history. See id. at 9. The Court finds that this allegation is sufficient to establish a causal link.

Finally, Defendants argue that Defendants Krystal Loveless, James Mu, Michelle Lick, Crystal Adams, Christina Cumpston, Brandi May, and Miguel Rodriguez are not mentioned anywhere in the amended complaint and should be dismissed. See id. at 10. The Court agrees but will recommend granting Plaintiffs further leave to amend as to these defendants.

### C. Plaintiffs' Request for Issuance of a Summons

Plaintiffs request that the Court issue a summons as to defendants who are newly named. See ECF No 50. This request will be denied. Upon adoption of these findings and recommendations and the filing of a further amended complaint, the Court will evaluate whether Plaintiffs have sufficiently stated claims against newly named defendants such that a summons should issue.

## III. CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

1. It is ORDERED that Plaintiffs' motion for issuance of a summons, ECF No. 50, is denied.

2. It is RECOMMENDED that Plaintiffs' motions for injunctive relief, ECF Nos. 63 and 66, be denied.

3. It is RECOMMENDED that Defendants' motion to dismiss, ECF Nos. 50 and 51, be granted in part and denied in part, as follows:

a. Defendants' motion to dismiss be granted insofar as the Court finds that Plaintiffs cannot pursue in this action claims related to probate proceedings. Such claims have been added to the second amended complaint absent leave of Court or stipulation and contrary to the District Judge's order granting leave to amend. Further, joinder of such claims

would violate Rule 18.

b. Defendants' motion to dismiss be granted insofar as the Court finds that Plaintiff Lacey Dungan lacks Article III standing to pursue any claims related to child dependency proceedings or the outcome of such proceedings.

c. Defendants' motion to dismiss be denied insofar as the Court finds that Plaintiff Lacey Dungan has standing to pursue claims on her own behalf which are not directly related to the child dependency proceedings or outcome of those proceedings.

d. Defendants' motion to dismiss be denied insofar as the Court finds that Plaintiffs have sufficiently alleged a municipal policy or custom to sustain Monell claims, but only to the extent such claims are not otherwise barred.

e. Defendants' motion to dismiss be denied insofar as the Court concludes that, based on the allegations in the second amended complaint concerning the date state court child dependency proceedings concluded, the Rooker/Feldman abstention doctrine does not apply to bar Plaintiffs' due process claims.

f. Defendants' motion to dismiss be denied insofar as the Court concludes that the "domestic relations exception" does not apply to bar Plaintiffs' due process claims.

g. Defendants' motion to dismiss be denied insofar as the Court concludes that, on the allegations presented in the second amended complaint and supplemental briefing, Plaintiffs have exhausted state remedies as to their due process claims.

h. Defendants' motion to dismiss be granted insofar as the Court concludes that, notwithstanding the findings above as to exhaustion and the Rooker/Feldman abstention doctrine and "domestic relations exception," Plaintiffs' due process claims are barred as an improperly collateral attack. Plaintiffs due process claims should be dismissed without further leave to amend and with prejudice.

i. Defendants' motion to dismiss be granted insofar as the Court concludes that Plaintiffs fail to state a claim for violation of their Fourth Amendment rights. Such claims should be dismissed without further leave to amend and with prejudice.

j. Defendants' motion to dismiss be granted insofar as the Court finds that Plaintiffs have not stated cognizable retaliation claims and that such claims be dismissed with further leave to amend.

k. Defendants' motion to dismiss be granted insofar as the Court finds that Plaintiffs have failed to state sufficient facts to establish First Amendment claims based on denial of access to the courts and that such claims be dismissed with further leave to amend.

/ / /

/ / /

1. Defendants' motion to dismiss be granted insofar as the Court finds that Plaintiffs have failed to allege sufficient facts to establish a causal link between certain named defendants, outlined above, and the claimed constitutional violations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 20, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE